IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Miriam Wheeler,	Case No. 3:09CV00358

      Plaintiff

v.	ORDER

Lonnie Newell, *et al*.,

      Defendants

      This is an action under Ohio tort law and 42 U.S.C. § 1983. Plaintiff, Miriam Wheeler, seeks money damages from defendants Sandusky, Ohio, Police Department Officers Lonnie Newell, Dawn Allen and Rob Bess for: 1) under § 1983, false arrest in violation of the Fourth Amendment to the U.S. Constitution; 2) under § 1983, use of excessive force in violation of the Fourth Amendment to the U.S. Constitution; and 3) under Ohio state law, assault, battery, false arrest and illegal imprisonment. Wheeler seeks money damages also from defendant City of Sandusky under § 1983 for maintaining policies or customs causing violations of Wheeler's Fourth Amendment rights.

      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

Pending is defendants' motion for summary judgment under Fed. R. Civ. P. 56. [Doc. 9]. For the following reasons, defendants' motion shall be granted.

**Background**

On August 10, 2007, Hernee Elizee, mother of K.G., arrived at the Sandusky Police Department and asked for help securing K.G.'s return from 1105 West Washington Street, Sandusky, Ohio. K.G. was staying there with his father, Almerio Griffith. Almerio Griffith is Miriam and Raymond Wheeler's son. Griffith and Elizee were never married.

Officer Lonnie Newell accompanied Elizee to the Wheeler residence. Once there, Officer Newell announced that he was there because Elizee wanted to take K.G. Griffith, yelling at Elizee, attempted to pass Officer Newell and confront Elizee outside the house. Officer Newell called for backup and ordered Griffith to remain in the house. Officer Dawn Allen arrived soon thereafter.

During a discussion between Officer Newell and Miriam Wheeler, Griffith attempted again to run past Officer Newell out of the house and towards Elizee. At this point, Officer Newell grabbed Griffith, pulled him back and pinned him against the wall in the hallway. Officer Allen called for further backup, and Officer Rob Bess arrived. Officer Newell released Griffith when he indicated he would cause no further trouble. Griffith then lay on his back in the living room of the house.

When Raymond Wheeler announced that he would go get K.G. from the child's room, Griffith quickly got up. Officers Bess and Allen grabbed and held Griffith, while Officer Newell handcuffed Griffith for disorderly conduct and resisting arrest. During Griffith's arrest, Miriam Wheeler's elbow, knee and chest were severely bruised, and she was scratched and hit in the eye. Officers Newell and Bess escorted Griffith to Officer Bess's police car.

Miriam Wheeler then ran to the door leading outside, at which point Raymond Wheeler grabbed her by the hand to stop her. Miriam Wheeler next, at the front door, faced Elizee and yelled at her that "God would punish her for what she was doing." [Doc. 10]. Officer Allen then arrested Miriam Wheeler. Officer Newell stated that the reason for her arrest was "because she was upset and would not calm down." [Doc. 10-2].

Miriam Wheeler told the officers that she did not need medical attention. The officers took Miriam Wheeler to jail, but released her later that night.

Miriam Wheeler now alleges that defendants: 1) used excessive force towards her in arresting Griffith; 2) falsely arrested her in violation of federal law; and/or 3) assaulted, battered, falsely arrested and/or illegally imprisoned her under state law.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).

The moving party must first show the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party meets that initial burden, the non-moving party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Rule 56(e) of the Federal Rules of Civil Procedure "requires the non[-]moving party to go beyond the [unverified] pleadings" and present evidence in support of its position. *Celotex Corp.*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the non-moving party's evidence as true and construes the evidence in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). A court shall grant summary judgment only if the materials offered in support of the motion show that there is no genuine issue as to any material facts, and that the moving party is thus entitled to summary judgment as a matter of law. *Celotex Corp.*, *supra*, 477 U.S. at 323.

## Discussion

### 1. Statute of Limitations

Wheeler brings claims under Ohio law for assault, battery, false arrest and illegal imprisonment. Defendants correctly argue that these state law claims are time-barred.

Ohio Revised Code § 2305.111(B) states that "an action for assault or battery shall be brought within one year after the cause of the action accrues." Claims of false arrest and false imprisonment[1] also have a one year statute of limitations. *Mayes v. Columbus*, 105 Ohio App. 3d 728, 746 (1995); *Francis v. Cleveland*, 78 Ohio App. 3d 593, 596-97 (1992).

Wheeler's cause of action accrued on the date of the incident: August 10, 2007. Her assault, battery, false arrest and false imprisonment claims thus were time-barred as of close of business on Monday, August 11, 2008.[2] Wheeler did not, however, file this action until January 30, 2009.

---

[1]Count Three of Wheeler's complaint alleges "illegal imprisonment." [Doc. 1-1]. As Wheeler suggests, I treat her allegation as one of false imprisonment. [Doc. 10]; *see also Garza v. Clarion Hotel, Inc.*, 119 Ohio App. 3d 478, 483 (1997) ("False imprisonment involves the unlawful restraint by one person of the physical liberty of another.").

[2]Wheeler's statute of limitations for these state law claims expired on August 11, 2008, rather than August 10, 2008, because the latter was a Sunday. *See* O.R.C. § 1.14; Ohio R. Civ. P. 6(A).

Wheeler argues that the statute of limitations for claims under § 1983 is two years in Ohio. She is correct. *See* O.R.C. § 2305.10(A) ("[A]n action for bodily injury . . . shall be brought within two years after the cause of action accrues."). That statute of limitations, however, applies solely to Wheeler's § 1983 claims of false arrest and excessive force, not to her Ohio law claims. *See, e.g.*, *Doe v. First United Methodist Church*, 68 Ohio St. 3d 531, 536 (1994) (finding that § 2305.10's two year statute of limitations applies to § 1983 excessive force claims, while § 2305.111's one year statute of limitations applies to Ohio battery and other intentional torts claims). Claims brought under § 1983 must be based on "rights, privileges, or immunities secured by the [*federal*] Constitution and laws." 42 U.S.C. § 1983 (emphasis added); *see also Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (specifying that § 1983 only protects federal rights).

Wheeler's state law claims thus do not qualify for the two year statute of limitations, and they are time-barred. Wheeler's § 1983 claims of false arrest and excessive force, however, are subject to the two year statute of limitations, and they are not time-barred.

Defendants' summary judgment motion is thus granted as to Wheeler's Ohio law assault, battery, false arrest and false imprisonment claims.

### 2. Wheeler's False Arrest Claim

Wheeler alleges that defendants violated her federal constitutional right to be free from unreasonable seizure under the Fourth Amendment.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

5

Under *Pearson v. Callahan*, U.S. , 129 S. Ct. 808, 818 (2009), I have discretion either to consider solely the issue of qualified immunity, without reaching the underlying constitutional issues, or first to address those issues and then, if necessary, determine whether defendants enjoy qualified immunity.

I apply the latter, two-step approach to determine whether defendants are entitled to qualified immunity as to both of Wheeler's § 1983 claims. Using this approach, I, taking the facts in the light most favorable to Wheeler, ask whether: 1) Wheeler has shown that defendants' conduct violated Wheeler's federal constitutional or statutory rights; and then 2) those rights were clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, *supra*, 129 S. Ct. at 818; *see also Phillips v. Roane County*, 534 F.3d 531, 538-39 (6th Cir. 2008).

### A. Violation of a Constitutional Right

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures[.]" U.S. Const. amend. IV; *see also Graham v. Connor*, 490 U.S. 386, 394 (1989). An arrest constitutes a seizure under the Fourth Amendment. *See Robbins v. California*, 453 U.S. 420, 450-51 (1981), *overruled on other grounds by U.S. v. Ross*, 456 U.S. 798 (1982). An arrest is constitutional if it is based on probable cause. *Virginia v. Moore*, U.S. , 128 S. Ct. 1598, 1607 (2008) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment.") (internal citation omitted). Consistent with the Fourth Amendment, "[p]olice may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *U.S. v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (citing *Beck v. Ohio*, 379

6

U.S. 89, 91 (1964)).

Such probable cause exists if the totality of the circumstances within the arresting officer's knowledge at the time of the arrest are sufficient to warrant an objectively reasonable police officer in concluding that an individual had committed or was committing an offense. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Beck*, *supra*, 379 U.S. at 91; *U.S. v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008).

Taking the facts in the light most favorable to Wheeler, defendants arrested Griffith for twice attempting to run outside the house and confront Elizee, while screaming and after being warned. During this tense situation and just after defendants arrested her son, Wheeler ran to the door leading outside. She then faced Elizee and yelled at her that "God would punish her for what she was doing." [Doc. 10]. Defendants, in response, then arrested Wheeler and stated that the reason for her arrest was "because she was upset and would not calm down." [Doc. 10-2].

### i. Disorderly Conduct

Defendants point to Ohio's disorderly conduct statute, O.R.C. § 2917.11(A)(5), as the main statutory basis for Wheeler's arrest.[3] The statute prohibits an individual from "recklessly caus[ing] inconvenience, annoyance, or alarm to another by . . . : Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." *Id*. Ohio Revised Code § 2901.22(C)

---

[3]Wheeler committed these actions in the presence of law enforcement officers. If her conduct satisfied the disorderly conduct provision, defendants could therefore legally arrest her. *See* § 2917.11(E)(3)(c) ("Disorderly conduct is a misdemeanor of the fourth degree if . . . [t]he offense is committed in the presence of any law enforcement officer."); *Compston v. Frede*, 1993 WL 30722, *3 (Ohio App.) (noting that a law enforcement officer may arrest an individual for committing a fourth degree misdemeanor).

7

defines the *mens rea* of recklessness:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

Ohio courts have held that behavior similar to Wheeler's falls within § 2917.11(A)(5). *See, e.g.*, *State v. Fant*, 79 Ohio App. 3d 458, 459-60 (1992). In *Fant*, the court held that the defendant's conduct fell under § 2917.11(A)(5) when he twice had to be led away from the scene of an arrest because he was loudly protesting the police's action. 79 Ohio App. 3d at 459-60. The court, in upholding the defendant's conviction, noted the potential for harm in the context of the "potentially hostile scene of the arrest." *Id.* at 460.

As in *Fant*, here Wheeler's angry remark accompanied physical conduct that a reasonable officer could have found physically threatening or physically offensive to Elizee. This conclusion is especially justified in light of Griffith's similar, albeit more threatening, conduct and the tense environment created as a result. Also as in *Fant*, there was thus the potential for violence.

I therefore find that defendants had probable cause for Wheeler's arrest under § 2917.11(A)(5), and Wheeler's false arrest claim under § 1983 must fail.[4]

### 3. Wheeler's Excessive Force Claim

---

[4] Because I find that defendants had probable cause to arrest Wheeler under § 2917.11(A)(5), I do not reach the question of whether they also had probable cause to arrest her under § 2919.23(A)(1). *See* Doc. 9 ("The objective facts in the record also supported [Wheeler's] arrest . . . for a violation of Ohio Revised Code § 2919.23(A)(1), Interference with Custody, . . . on the basis that [Wheeler] intended to keep the minor child from his parent.").

Wheeler also alleges that defendants used excessive force towards her in the process of arresting her son.[5]

### A. Violation of a Constitutional Right

The Supreme Court has stated:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is governmental termination of freedom of movement *through means intentionally applied*.

*County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)) (emphasis in original); *accord Bublitz v. Cottey*, 327 F.3d 485 (7th Cir. 2003) (holding that, where plaintiffs were "simply not the intended object of the defendant officers' attempts to seize the fleeing [suspect,] . . . the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim").

In applying *Lewis* and *Brower*, the Sixth Circuit held: "[T]he Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries *inadvertently inflicted upon an innocent third party* by police officers' use of force while attempting to seize a perpetrator." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).

A court assessing such a claim, where the "[a]lleged conduct . . . does not implicate a constitutional right protected by another amendment," should instead assess that claim "under the substantive due process component of the Fourteenth Amendment." *Ciminillo v. Streicher*, 434 F.3d

---

[5]Wheeler's memorandum in opposition to defendants' motion to dismiss includes no argument regarding this claim. Wheeler groups the excessive force and municipal liability claims together, presenting argument only on the latter claim. She, nevertheless, makes this claim in her complaint, see Doc. 1-1, and mentions in the factual section of her affidavit that "[w]hen [Wheeler's son] stood up [after being handcuffed and told to lie down], the three officers attacked him and [Wheeler] was injured in the assault." [Doc. 10]. I therefore address the merits of her claim alleging excessive force towards her in defendants' arrest of her son.

461, 465 (6th Cir. 2006) (citing *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). The "substantive component of the due process clause [of the Fourteenth Amendment] insulates citizens against the arbitrary exercise of governmental power." *Claybrook*, *supra*, 199 F.3d at 359. Under the Fourteenth Amendment, a plaintiff must thus show that the defendants' conduct "shocked the conscience." *Lewis*, *supra*, 523 U.S. at 846. The Supreme Court and Sixth Circuits have clarified this standard:

> [I]n a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . . public servants' reflexive actions "shock the conscience" only if they involved force employed "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline."

*Claybrook*, *supra*, 199 F.3d at 359 (citing *Lewis*, *supra*, 523 U.S. at 852-53).

In *Claybrook*, the court held that police officers' behavior did not shock the conscience when a bystander was seriously injured during a shootout between the police and a suspect. *Id.* at 361. The court emphasized the extremely high showing required to meet the "shocks the conscience" threshold. *Id.*

Here, Wheeler alleges defendants injured her during her son's arrest. She does not, however, claim or show that defendants *intentionally* harmed her in arresting Griffith. Her claim, therefore, is analyzed under the Fourteenth Amendment's "shocks the conscience" test.

Like the officers in *Claybrook*, defendants, while arresting a third party, allegedly injured Wheeler in the ensuing scuffle. Wheeler, however, has not argued nor shown that defendants acted "maliciously and sadistically." Neither has she presented evidence demonstrating that defendants used excessive force against her.

Wheeler has thus not adequately shown that defendants' behavior "shock[ed] the conscience," and her excessive force claim must fail.[6]

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment [Doc. 9] be, and the same hereby is, granted.

So ordered.

s/James G. Carr  
James G. Carr  
Chief Judge

---

[6] The defendant officers not having violated any of Wheeler's constitutional rights, it is not necessary to address her claims against the City of Sandusky.